UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-282-RGJ-CHL

**KIM J. MEAUX PUCKETT,**                                                                                  **Claimant,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                                                   **Defendant.**

## Report and Recommendation

Claimant Kim J. Meaux Puckett ("Puckett") has appealed the Commissioner's decision denying her request for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Puckett filed her fact and law summary on September 22, 2017, and the Commissioner timely replied on December 21, 2017. This matter was referred to the undersigned on July 10, 2017 for a report and recommendation. For the reasons stated below, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I. Factual Background

On March 20, 2014, Puckett filed an application for DIB and SSI, alleging a disability onset date of October 19, 2010. (DN 13-5, #227.) The Commissioner denied her initial application and again upon reconsideration. (DN 13-4, #155, 165.) On February 24, 2016, Puckett and her attorney appeared before Administrative Law Judge John R. Price ("ALJ") for a hearing in Louisville, Kentucky. (DN 13-2, #79.) The ALJ issued an unfavorable decision on April 22, 2016. (*Id*. at 57.) In his written opinion, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

> 2. The claimant has not engaged in substantial gainful activity since October 19, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920)(d), 416.925, and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasionally crouching and crawling but no climbing of ladders, ropes, or scaffolds. She should avoid extremely cold temperatures and concentrated exposure to vibration. Further, the claimant is limited to avoidance of the general public and to occasional interaction with coworkers.
>
> 6. The claimant is capable of performing past relevant work as a bindery worker and as a quality control worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 19, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

The appeals council subsequently denied Puckett's request for review. (*Id*. at 45.)

## II. Standard of Review

The Social Security Act authorizes payment of DIB and SSI to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). A "disability" is an:

> [i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). When a claimant files an application for DIB, the claimant must establish that he or she became "disabled" prior to the date his or her insured status expired. 42 U.S.C. § 423(a), (c); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (per curiam).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. 20 C.F.R. § 404.1520(a)(1); *Sullivan v. Finkelstein*, 496 U.S. 617, 620 (1990). The claimant has the burden of proof during the first four steps. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Steps two, three, four, and five are at issue here.

At step two, the ALJ determines if the claimant has a "severe" impairment, and it is the claimant's burden to demonstrate that she does. 20 C.F.R. §§404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). To satisfy this burden, the claimant must show she suffers from a medically determinable physical or mental condition that satisfies the duration requirement, 20 C.F.R. §§404.1509, 416.909, and significantly limits her ability to do one or more basic work activities. 20 C.F.R. §§404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); SSR 96-3p; SSR 96-4p; *Higgs*, 880 F.2d at 863. Alternatively, the claimant must show she suffers from a combination of impairments that is severe and meets the duration requirement. 20 C.F.R. §404.1520(a)(4)(ii) and (c).

At step three, the ALJ considers the severity of the claimant's impairment. 20 C.F.R. §404.1520(a)(4)(iii). If the claimant has an impairment that meets or equals one of the listed

3

impairments, she is disabled. *Id*. The listed impairments "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id*. at 530 (internal quotation marks omitted).

At step four, the ALJ considers the claimant's residual functional capacity ("RFC") and past relevant work. 20 C.F.R. § 404.1520(f). RFC is an assessment of the claimant's "remaining capacity for work once her limitations have been taken into account." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (internal quotation marks omitted).

At step five, the ALJ assesses the claimant's residual functional capacity along with age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). A claimant who cannot make an adjustment to other work is disabled. 20 C.F.R. § 404.1520(g)(1). Here, the Commissioner bears the burden of demonstrating that there are other jobs the claimant is capable of performing in the local area. *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 529 (6th Cir. 1997).

This Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence." 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs*., 974 F.2d 680, 683 (6th Cir. 1992). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F. 3d at 695. In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of

credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). The Court must also determine if the correct legal standards were applied. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

### III. Analysis

Puckett makes several arguments on appeal. First, she argues that the ALJ improperly failed to consider whether her obesity constituted a severe impairment during step two of the analysis. (DN 15, #843–44.) Relatedly, she also argues that the ALJ failed to factor in her obesity when he was considering whether she met or medically equaled the requirements in Listings 1.04 and/or 12.04. (*Id*. at 844.) Next, she argues that ALJ's RFC analysis was faulty because he did not consider all of the available medical evidence in rendering his opinion. In particular, she takes issue with his decision to not assign controlling weight to the opinion of her treating orthopedist, Dr. Raymond Shea. (*Id*. at 844–48.) Finally, Puckett asserts that the ALJ's hypothetical question for the vocational expert "did not fairly represent the substantial evidence on [her] limitations." (*Id*. at 848.) The Court will address Puckett's arguments in turn.

### A. Obesity as a Severe Impairment

Puckett's first argues that the ALJ should have found that she suffered from the severe impairment of obesity. (DN 15, #843–44.) Puckett cites to numerous documents in the record that she claims support the fact that she is obese, and the Commissioner effectively concedes that at certain points during the relevant time period, the record indicates that Puckett would be

considered at least "Level I" obese.[1] (DN 20, #863.) Even so, the Commissioner asserts that Puckett never raised the issue of obesity on her application paperwork or at the hearing before the ALJ, which would tend to show that it did not impact her daily life. (*Id.* at 864.) For his part, the ALJ found that Puckett had the severe impairments of cervical and lumbar degenerative disc disease, depressive disorder, and some "moderate limitations with regards to her mental impairment." (DN 13-2, #62.) But beyond that, the ALJ found "no evidence of any other impairment that had significantly affected the claimant's ability to perform basic work activities." (*Id.*)

At step two of the five-step analysis, the Commissioner deems a condition to be a "severe" impairment if it "significantly" limits the claimant's physical or mental ability to do basic work activities. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); 20 CFR §§404.1520(c), 404.1521(a). "Only slight abnormalities that minimally affect a claimant's ability to work can be considered non-severe." *Jones v. Comm'r of Soc. Sec.*, 142 F. Supp.3d 620, 628 (S.D. Ohio 2015) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)).

In this case, the undersigned finds that substantial evidence supports the ALJ's finding that Puckett's obesity was not a severe impairment. As the Commissioner asserts, this appears to be the first time that Puckett has argued that her obesity impairs her daily functioning. She did not raise it in her initial application, at her hearing, or in her appeal to the Appeals Council. Puckett does not explain how her obesity qualifies as a "severe impairment," nor does she explain how her weight affects her ability to perform basic work activities. Instead, she merely cites to places in

---

[1] SSR 02-01p, a Social Security Ruling that discusses the evaluation of obesity claims, includes a discussion of the three levels of obesity recognized by the National Institutes of Health. The lowest level, Level I, begins when someone has a BMI of 30.0. In this case, the records indicate that Puckett's BMI ranged from 30.1 to 30.3.

the record that list her weight as evidence that she was obese. (DN 15, #844.) It is the claimant's burden to present evidence to establish the fact that she suffers from a severe impairment. *Watters v. Comm'r of Soc. Sec. Admin.*, 530 Fed. App'x 419, 421 (6th Cir. 2013). She has not done so here.

Even if the undersigned were to find that substantial evidence did not support the ALJ's decision, his error would not necessarily require reversal or remand. So long as an ALJ finds that a claimant has at least one severe impairment at step two, his decision to not find another condition to be a severe impairment is irrelevant. *See, e.g.*, *Anthony v. Astrue*, 266 Fed. App'x. 451, 457 (6th Cir. 2008); *Pompa v. Comm'r of Soc. Sec.*, 73 Fed. App'x. 801, 803 (6th Cir. 2003) (holding that because the ALJ found the claimant to have at least one severe impairment at step two, it was of "little consequence" whether he found any other ailments to be severe); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (no reversible error when the ALJ found at least one of claimant's ailments to be "severe" and therefore continued with the sequential analysis). Here, at the very most, the ALJ's finding that Puckett's obesity was not a severe impairment would be harmless error.

For these reasons, the undersigned finds that substantial evidence supports the ALJ's decision to not find Puckett's obesity to be a severe impairment.

### B. Puckett's Obesity and Listings 1.04 and 12.04

Puckett's next argument is that the ALJ erred when he failed to take her obesity into consideration during his analysis of Listings 1.04 and 12.04. (DN 15, #844–45.) As the above analysis shows, this argument lacks merit. It is well-settled law that a claimant has the burden of proving that she meets every requirement of a listing. *King v. Sec'y of Health & Human Servs.*,

742 F. 2d 968, 974 (6th Cir. 1986). Just as with step two, Puckett does not explain how her obesity would enable her to meet the requirements of either Listing 1.04 or 12.04. Indeed, Puckett does not even restate the requirements of either listing in her brief. The furthest she goes towards satisfying her burden is repeating portions of her hearing testimony concerning her social functioning, but she does not explain how that evidence satisfies the requirements of either Listing 1.04 or 12.04. (DN 15, #845.) This falls well short.

Puckett's assertion that the ALJ failed to consider the "combined effects" of her impairments when determining whether she met a Listing is similarly without merit. "An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a combination of impairments in finding that the [claimant] does not meet" a listing. *Hill v. Comm'r of Soc. Sec.*, 560 Fed. App'x. 547, 551 (6th Cir. 2014) (quoting *Loy v. Sec'y of Health & Human Servs*., 901 F.2d 1306, 1310 (6th Cir. 1990)). Here, the ALJ did specifically note that Puckett did not "have an impairment or combination of impairments" that met or medically equaled the severity of one of the listed impairments. (DN 13-2, #63.)

### C. The ALJ's RFC Analysis

Next, Puckett argues that ALJ failed to consider all the relevant evidence when formulating his RFC analysis. She generally asserts that the ALJ did not consider "the combined effect of Puckett's depression/anxiety, cervical/lumbar degenerate disc disease and obesity." (DN 15, #846.) She specifically argues that the ALJ violated the treating physician rule when he did not give controlling weight to opinion of Dr. Raymond Shea, her treating physician. (*Id*. at 848.)

Regarding her general argument, Puckett essentially asks this Court to re-weigh the medical evidence in the record. As before, she repeatedly cites to medical evidence in the record that supports her argument, and then asserts that the ALJ did not consider that evidence. (DN 15, #846.) But the ALJ accurately summarized all the relevant medical evidence over the course of four pages in his opinion, describing in detail her testimony at her hearing, her treatment history for neck and back pain, and her treatment for her depression. (DN 13-2, #65–69.) Even if the undersigned were to agree with Puckett that the evidence on balance supports more severe restrictions than what the ALJ found, the substantial evidence standard only requires that there be some evidence to support the ALJ's final decision—even if there is evidence that supports a different finding. 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). Puckett also highlights purported "contradictions" in the record, asserting that the ALJ did not make any effort to resolve them. (DN 15, #847.) But it is not the task of the reviewing court to resolve contradictions within the record. *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). In sum, Puckett's general RFC argument is unpersuasive.

Turning to Puckett's specific argument concerning Dr. Shea, she argues that the ALJ did not follow the treating physician rule when he did not assign controlling weight to his opinion. (DN 15, #848.) Dr. Shea, Puckett's treating orthopedist, opined in July 2014 on a questionnaire form that Puckett was limited to standing or walking for less than two hours a day and sitting for less than six hours a day. (DN 13-7, #429–30.) He opined that she had no environmental limitations, but her manipulative functions were limited to occasionally reaching, handling, fingering, and feeling. (*Id.*) In an opinion letter issued in April 2015, Dr. Shea stated that she "has

had psychiatric issues over the years with anxiety and depression." (*Id*. at 580.) He also stated that she "has not been able to work since early 2013" and that she is "permanently and totally disabled" because of her degenerative disc disease, domestic issues, and mental health problems. (*Id*.)

Under the Social Security regulations, there are three categories of opinions from medical sources: treating, examining, and non-examining sources. 20 CFR §404.1502. A physician will be considered a treating source if the claimant sees him or her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Smith v. Comm'r of Soc. Sec.*, 482 F. 3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502). The parties do not disagree that Dr. Shea qualifies as treating physicians, so the undersigned will move on to the next step in the analysis. A treating physician's medical opinion is generally entitled to controlling weight, but it is not automatically given such weight. It is well-established that "the opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings and is not contradicted by substantial evidence to the contrary." *Edwards v. Comm'r of Soc. Sec.*, 97 Fed. App'x. 567, 570 (6th Cir. 2004) (citing *Crouch v. Sec'y of Health & Human Servs.*, 909 F. 2d 852, 857 (6th Cir. 1990)); *Hardaway v. Sec'y of Health and Human Servs.*, 823 F. 2d 922, 927 (6th Cir. 1987). If the ALJ does not give controlling weight to a treating source's opinion, he is required to:

> apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§404.1527(c), 416.927(c). These factors are the "good reasons" referenced above. *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011). Even though the ALJ must articulate "good reasons," he is not required to explicitly recite the regulation factors if his explanation reflects them. *Infantado v. Astrue*, 263 Fed. App'x. 469, 474 (6th Cir. 2008).

In this case, the undersigned finds that the ALJ gave good reasons as to why he did not assign Dr. Shea's opinion controlling weight. The ALJ eventually assigned "little weight" to Dr. Shea's medical opinion because it was "inconsistent with substantial other evidence" in the record and because Dr. Shea did not reference any objective medical evidence to support his opinion. (DN 13-2 at 69–70.) Additionally, Dr. Shea's own treatment records did not support his proffered limitations. For instance, the ALJ noted that Dr. Shea's notes indicated that Puckett suffered from no more than moderate limitations with decreased range of motion in her cervical and lumbar spine. (*Id*. at 69.) Yet in an April 2015 opinion letter, Dr. Shea stated that Puckett had been disabled prior to that examination. (DN 13-7, #580.) The ALJ also highlighted that in a February 2015 examination, Dr. Shea opined that Puckett had "good strength in both upper extremities." (DN 13-2, #70.) Despite his own notes, Dr. Shea stated just a few months later that Puckett was "permanently and totally disabled." (DN 13-7, #580.) The ALJ's reasons for not assigning Dr. Shea's opinion controlling weight reflect a number of the "good reason" factors, namely its lack of supportability and inconsistency with the record as a whole. His decision to do so was supported by substantial evidence.

### D. The ALJ's Hypothetical to the Vocational Expert

Puckett's last argument is virtually identical to several of her previous arguments—that the ALJ's hypothetical question to the vocational expert did "not fairly represent the substantial evidence on [her] limitations." (DN 15, #848.) The Commissioner argues that Puckett's argument is "nothing more than a rehash of her disagreement with the ALJ's RFC finding." (DN 20, #874.)

The undersigned agrees with the Commissioner. Although Puckett disagrees with the ALJ's hypothetical question to the vocational expert, she does not explain which parts of it were inconsistent with the record. Once again, she merely cites to medical evidence in the record that tends to support her argument without an explanation of its relevance or importance. The undersigned declines to formulate a more thorough argument on Puckett's behalf. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed. App'x. 540, 543 (6th Cir. 2014) (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."))

### IV. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

cc: Counsel of record

**<u>Notice</u>**

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Crim. P. 59(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).