UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KIM J. MEAUX PUCKETT,                                                                                 Plaintiff,

v.                                                           Civil Action No. 3:17-cv-282-RGJ

COMMISSIONER OF SOCIAL SECURITY,                                Defendant.

\* \* \* \* \*

## **MEMORANDUM OPINION & ORDER**

Plaintiff Kim J. Meaux Puckett ("Puckett") filed this action seeking review of the denial of disability insurance benefits and supplemental security income by Defendant Commissioner of Social Security ("Commissioner"). [DE 1]. The case was referred to United States Magistrate Judge Colin Lindsay who issued Findings of Fact, Conclusions of Law and Recommendation ("R&R") that the Commissioner's decision be affirmed. [DE 23]. Objections were timely filed by Puckett, [DE 24], and the Commissioner responded, [DE 25]. This matter is ripe for adjudication. For the reasons set forth below, the Court **OVERRULES** Puckett's Objections [DE 24], and **ACCEPTS** Magistrate Judge Lindsay's R&R without modification [DE 23].

## **DISCUSSION**

The R&R accurately sets forth the factual and procedural background of the case and is incorporated by reference. [DE 23 at 877–88]. In sum, Puckett applied for disability insurance benefits and supplemental security income. [DE 1 at ¶ 4]. After the Commissioner denied her claim both initially and upon reconsideration, Puckett appeared before Administrative Law Judge John R. Price ("ALJ"). *Id.* The ALJ ruled against Puckett and found:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

> 2. The claimant has not engaged in substantial gainful activity since October 19, 2010, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasionally crouching and crawling but no climbing of ladders, ropes, or scaffolds. She should avoid extremely cold temperatures and concentrated exposure to vibration. Further, the claimant is limited to avoidance of the general public and to occasional interaction with coworkers.
>
> 6. The claimant is capable of performing past relevant work as a bindery worker and as a quality control worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 19, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[DE 13-2].

On appeal to the ALJ, Puckett argued: (1) the ALJ did not consider whether her obesity constituted a severe impairment [DE 23 at 881]; (2) the ALJ did not factor in her obesity when determining whether she met the requirements in Listing 1.04 and/or 12.04 [*Id.*]; (3) the ALJ's residual functional capacity ("RFC") analysis did not consider all available medical evidence, specifically the opinion of Puckett's treating orthopedist [*Id.*]; and (4) the ALJ's hypothetical question to the vocational expert failed to represent the evidence of her limitations. *Id.* After

reviewing the record and relevant law, Magistrate Judge Lindsay found that the ALJ's final decision was supported by substantial evidence and rejected each of Puckett's arguments.

Repeating her arguments in her appeal to the ALJ, Puckett now objects to Magistrate Judge Lindsay's findings in the R&R that: (1) substantial evidence supports the ALJ's finding that Puckett's obesity was not a severe impairment; (2) the ALJ considered the combined effects of Puckett's mental and physical impairments when determining whether her impairments qualified under Listing 1.04 and 12.04; (3) the ALJ's RFC analysis was supported by substantial evidence; and (4) the ALJ's hypothetical question for the vocational expert fairly represented the evidence of Puckett's limitations. [DE 24].

A. **Standard of Review**

Under 28 U.S.C. § 636(b)(1)(B), a district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of facts and recommendations for the disposition" of matters including review of the Commissioner's final decision on disability insurance benefits. This Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alterations in original) (citation omitted). A general objection that fails to identify specific factual or legal issues from the R&R is insufficient as it duplicates the magistrate judge's efforts and wastes judicial resources. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate *Id.* The Court need not review, under a *de novo* or any other standard, those aspects of the report and recommendation

to which no specific objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Rather, the Court may adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Id.* at 151.

**B. Legal Objections**

Puckett's objections to the R&R's findings are essentially identical to the arguments made in her initial challenge of the ALJ's findings. [DE 23 at 88; DE 24]. Indeed, in response to Puckett's objections, the Commissioner declined to address any specific arguments and instead incorporated the arguments it presented in reply to Puckett's initial brief. [DE 25 at 900].

An "objection . . . that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Altyg v. Berryhill*, No. 16-11736, 2017 WL 4296604, at *1 (E.D. Mich. Sept. 28, 2017) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless."). Therefore, Puckett's general objections and repetition of the arguments made in her initial challenge of the ALJ's decision cannot qualify as objections. Thus, the Court need not conduct a *de novo* review of the Magistrate Judge's report regarding Puckett's objections. *Ells v. Colvin*, No. 3:16-CV-00604-TBR, 2018 WL 1513674, at *2 (W.D. Ky. Mar. 27, 2018).

Even so, if the Court were to consider the merits of Puckett's objections and conduct a *de novo* review, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to

4

support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1992). In reviewing the case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 946 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1986)).

    i.    **Obesity as a Severe Impairment**

To determine whether an individual is entitled to disability benefits, an ALJ follows the process outlined in 20 C.F.R. § 404.1520. First, the ALJ considers whether the claimant has substantial gainful employment. 20 C.F.R. § 404.1520(a)(4). Second, the ALJ considers whether the claimant has suffered from a severe medically determinable physical or mental impairment, or combination of impairments, for a certain duration. *Id.* Third, the ALJ considers whether the impairments meet or equal one of the specific medical disorders listed in the regulations. *Id.* Fourth, the ALJ assesses the claimant's RFC and past relevant work. *Id.* Fifth, the ALJ determines whether given the claimant's RFC, age, education, and work experiences, the individual can make certain adjustments to keep working. *Id.* While the claimant bears the burden of proof in establishing steps one through four, "the burden shifts to the Commissioner at step five to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

Puckett's first objection involves step two of the disability determination. She claims the R&R erred in determining that substantial evidence supports the ALJ's finding that her obesity is not a severe impairment that significantly limits her ability to work. [DE 24 at 890]. "To determine

that a claimant has a severe impairment, the ALJ must find that an impairment or combination of impairments significantly limits the claimant's ability to do basic work activity." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n2 (6th Cir. 2007) (citing 20 C.F.R. § 416.920). Step two is a "de *minimis* hurdle . . . intended to screen out totally groundless claims." *Nejat*, 359 F. App'x at 577 (internal quotations and citations omitted). As a result, "if an impairment has more than a minimal effect on the claimant's ability to do basic work activity, the ALJ must treat it as severe." *Id.* "[O]nce the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (citing 20 C.R. F. § 404.1545(e)). Thus, if the ALJ finds that the claimant has at least one severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Id.* Accordingly, the ALJ's failure to categorize additional impairments as severe "could not constitute reversible error." *Mariarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ found that Puckett's severe impairments include cervical and lumbar degenerative disc disease and depressive disorder. [DE 13-2 at 62]. Thus, Puckett satisfied the *de minimums* hurdle of step two, prompting the ALJ to consider Puckett's severe and non-severe impairments in the remaining steps of the sequential analysis. *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). That the ALJ did not find obesity as an additional severe impairment is legally irrelevant and does not constitute reversible error. *Id.*

ii. **Listing 1.04 and 12.04**

Second, Puckett asserts that the ALJ failed to consider the combined effects of her impairment, including her obesity, in determining that she did not have an "impairment or

6

combination of impairments that met or medically equaled" the severity of one of the listed impairments as required by step three of the disability analysis. Social Security Ruling ("SSR") 02-1p requires ALJs to consider obesity at steps two through five of the disability determination. *SSR 02–1p*, 2002 WL 34686281, at *3 (Sept. 12, 2002); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016). SSR 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat*, 359 F. App'x at 576 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006)). Obesity "must be considered throughout the ALJ's determinations," "precisely because the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015).

The issue here is whether the ALJ properly considered Puckett's obesity given that she did not raise obesity as an impairment that affected her ability to work in either her application or at the hearing. The Commissioner relies on *Cranfield v. Commissioner of Social Security* to assert that "where Plaintiff fails to present evidence that her obesity affected her functioning," the ALJ's failure to consider obesity with the cumulative effects of other impairments as required by SSR 02-1p is harmless error. [DE 20 at 863]; 79 F. App'x 852 (6th Cir. 2003). In *Cranfield*, the Sixth Circuit found that the ALJ "had no obligation to address Ms. Cranfield's obesity" when Ms. Cranfield failed to provide evidence the ALJ could use to determine whether her obesity was an impairment or affected her ability to work. *Cranfield*, 79 F. App'x at 858.

An ALJ does not commit reversible error in failing to address the claimant's obesity where the claimant fails to present evidence of the impairment. *O'Neill v. Colvin*, No. 1:13 CV 867, 2014 WL 3510982, at *12 (N.D. Ohio July 9, 2014). For example, in *Smith v. Astrue*, the court noted

7

that "[w]hile Plaintiff calls this Court's attention to documents in the record showing her height and weight, which appear to meet the definition of obesity, Plaintiff did not present any evidence to the ALJ that her obesity impacted her ability to work." No. 3:10CV1829, 2012 WL 1232272, at *4 (N.D. Ohio Apr. 12, 2012). Moreover, "Plaintiff did not testify about her obesity, did not list obesity as an impairment in her disability report, and the medical evidence that she submitted did not establish that her obesity impacted her ability to work or how it impacted her ability to work." *Id.* at *5. Accordingly, the court found that the "ALJ did not error by failing to address Plaintiff's obesity." *Id.*; *see also Benson v. Astrue*, No. 1:10CV1654, 2011 WL 6122944, at *9 (N.D. Ohio Nov. 15, 2011) (ALJ did not err in failing to address obesity when claimant "relies on the fact that there is a notation of [claimant's] height and weight in her treating physician's medical notes, and that the consultative examiner noted [claimant's] height and weight and stated [claimant] appeared to be an obese lady."); *O'Neill v. Colvin*, No. 1:13 CV 867, 2014 WL 3510982, at *11 (N.D. Ohio July 9, 2014) (collecting cases).

The Social Security Administration has adopted the National Institutes of Health's definition of obesity as a Body Mass Index ("BMI") of 30.0 or above.[1] 2002 WL 34686281, at *2. The Commissioner concedes that the "medical records show that Puckett weighted 170 to 171 pounds during most of the periods at issue, with a corresponding BMI of 30.1-30.3." [DE 20 at 863]. Although Puckett qualifies as obese, she was never diagnosed with obesity. She also failed to list obesity as an impairment on her disability application, [DE 20 at 894], and neither Puckett nor her doctor mentioned obesity at the hearing before the ALJ, [DE 13-2 at 77–108]. While there are several references to Puckett's height and weight in the medical record, [DE 15 at 844], this data alone does not adequately establish how obesity impacted Puckett's ability to work. *See Smith*,

---

[1] There are three levels of obesity: "Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed 'extreme' obesity." 2002 WL 34686281, at *2.

2012 WL 1232272. Since Puckett failed to present evidence that her obesity was an impairment that affected her ability to work, the ALJ's failure to address Puckett's obesity does not constitute reversible error.

### iii. ALJ's RFC Analysis

Puckett objects to two aspects of the R&R's examination of the ALJ's RFC analysis. First, Puckett claims that the ALJ erred in failing to consider obesity during the RFC analysis. [DE 24 at 894]. As explained in the previous section, the ALJ's failure to address Puckett's obesity in the RFC analysis does not constitute reversible error because Puckett failed to provide sufficient evidence that her obesity affected her ability to work. Second, Puckett objects to the R&R's finding that substantial evidence supported the ALJ's decision not to assign controlling weight to Dr. Shea's opinion, Puckett's treating physician. *Id.* at 895.

As discussed in the R&R, 20 C.F.R. § 404.1527 outlines the procedure by which the ALJ examines medical opinions. The Social Security Administration "promises claimants that ALJs will evaluate every medical opinion they receive. Yet it also recognizes that not all medical sources need be treated equally, classifying acceptable medical sources into three types: non-examining sources, nontreating (but examining) sources, and treating sources." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (internal quotation and citation omitted). At issue here is a treating source, or a physician with whom the claimant has an "ongoing treatment relationship." *Id.* An ALJ generally "give[s] more weight to medical opinions from [] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairments." 20 C.F.R. § 404.1527(c)(2).

The ALJ must give controlling weight to the treating source's opinion when the "medical opinion on the issues of the nature and severity of [the claimant's] impairments is well-supported

9

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* When the ALJ does not give the treating source's opinion controlling weight, he must "apply certain factors—namely the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, the ALJ must articulate "good reasons" for the weight given to the physician's opinion. *Infantado v. Astrue*, 263 F. App'x 469, 474 (6th Cir. 2008) (finding that the ALJ gave "good reasons" by relying on, but not explicitly citing, the factors). *See Rogers*, 486 F.3d at 246 (finding that the ALJ did not give "good reasons" when the only explanation for the ALJ's decision was that "the record does not support the limitations of the severity suggested by the treating physician").

The ALJ's decision not to give controlling weight to Dr. Shea's opinion was supported by substantial evidence. It is undisputed that Dr. Shea qualifies as Puckett's treating physician. [DE 23 at 886]. Even so, Dr. Shea's opinion was not entitled to controlling weight because it is unsupported by the record and it is inconsistent with other substantial evidence in the record. As noted by the R&R, Dr. Shea did not reference any objective medical evidence to support his opinion that Puckett was "permanently and totally disabled." [DE 13-7 at 580]. Moreover, Dr. Shea made inconsistent statements about Puckett's limitations. First, Dr. Shea noted during his examination of Puckett that she had moderate limitations with decreased range of motion, [DE 13-2 at 69], but later wrote that Puckett had been disabled before the examination, [DE 13-7 at 580]. Additionally, Dr. Shea noted that Puckett had "good strength in both upper extremities," [DE 13-2 at 70], but just a few months later stated that Puckett was "permanently and totally disabled,"

[DE 13-7 at 580]. Finally, the ALJ properly articulated his decision not to give Dr. Shea's opinion controlling weight based on the inconsistencies of the opinion with record, as well as the fact that Dr. Shea's opinions were unsupported by the record. [DE 13-2 at 69–70]. For these reasons, the ALJ's decision not to give controlling weight to Dr. Shea's opinion was supported by substantial evidence.

### iv. ALJ Hypothetical to the Vocational Expert

Finally, Puckett objects to Magistrate Judge Lindsay's finding that she "merely cites to medical evidence in the record that tends to support her argument without an explanation of its relevance or importance." [DE 23 at 888]. Puckett notes that the state agency expert and treating specialist found that she has weakness in both upper arm extremities and asserts that because the ALJ's hypothetical question did not account for this impairment, he failed to represent fairly the substantial evidence of Puckett's limitation. [DE 24 at 997–98]. The Court agrees with the R&R's assessment that Puckett failed to explain the relevance or importance of her arguments. Puckett does "not elaborate or provide any further development on the argument" in her objection. *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014). As a result, this issue is effectively waived. *Id.* (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

## **CONCLUSION**

For the stated reasons,

**IT IS ORDERED** that Puckett's Objections, [DE 24], are **OVERRULED** as set forth herein; and

**IT IS FURTHER ORDERED** that the Report and Recommendation of the United States Magistrate Judge, [DE 23], is **ACCEPTED** without modification as the findings of fact and conclusions of law of this Court.

Rebecca Grady Jennings, District Judge
United States District Court

August 6, 2019